FILED

2017 MAR 28 AM 11: 08

U.S. DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO, FLORIDA

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION DIVISION**

**KELLY GONZALEZ,**
**Plaintiff,**

vs.

**PNC BANK, A NATIONAL ASSOCIATION,**
**Defendant.**

**CASE NUMBER:** 6:17-cv-543-ORL-40-DCI

**COMPLAINT**
**AND DEMAND FOR JURY TRIAL**

Kelly Gonzalez, Plaintiff herein, through her undersigned counsel and pursuant to the Federal Rules of Civil Procedure, files this Complaint against PNC BANK, N.A., Defendant herein, and alleges:

**NATURE OF CLAIM**

1. This is an action for damages, declaratory judgment, and injunctive relief to redress the deprivation of rights secured by Section 760, et seq., Florida Statutes, known as the Florida Civil Rights Act of 1992 ("FCRA"), and by 42 U.S.C. §12101, et seq., known as The Americans with Disabilities Act of 1990 ("ADA") and under 29 U.S.C. Section 2601 et. seq. to correct violations of the Family Medical Leave Act ("FMLA").

**JURISDICTION AND VENUE**

2. Jurisdiction is conferred upon this Court under 28 U.S.C. § 1331 and 42

U.S.C. § 2000, et seq.

3. This Court has supplemental jurisdiction over state law claims discussed below under 28 U.S.C. Section 1367(a) because they arise out of the same case or controversy.

4. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) as the Defendant has, or usually keeps, an office for transaction of its customary business in Orlando, Orange County, Florida and because a substantial part of the events or omissions giving rise to the claim occurred in this district.

**THE PARTIES**

5. At all times material hereto, Plaintiff was a legal resident of the United States of America and the State of Florida.

6. Defendant, PNC Bank, N.A. has, or usually keeps, an office for the transaction of its customary business in Orlando, Orange County, Florida. Defendant was Plaintiff's employer as that term is defined under the FCRA, ADA, and FMLA.

**CONDITIONS PRECEDENT**

7. Prior to filing this civil action, Plaintiff timely filed a written Charge of Discrimination with the U.S. Equal Employment Opportunity Commission (hereinafter "EEOC") which was dual filed with the Florida Commission on Human Relations (hereinafter "FCHR").

8. More than 180 days have expired since Plaintiff filed her Charges of Discrimination with the EEOC and FCHR.

9. The EEOC issued Plaintiff a Notice of Rights dated December 28, 2016

hereto attached as Exhibit "A".

10. Plaintiff has filed this action within her 90-day Notice of Rights deadline.

11. Plaintiff has exhausted all administrative prerequisites and conditions precedent and she has filed this action within the applicable period of time and statute of limitation pursuant to the FCRA and ADA.

12. All conditions precedent to jurisdiction have occurred or been complied with related to Plaintiff's FMLA action including but not limited to the following: Plaintiff has been employed for at least 12 months by PNC BANK, and has worked at least 1,250 hours for PNC BANK in the last 12 month period.

**FACTS**

13. Plaintiff began her employment with the Defendant through an acquisition by Defendant of RBC Bank on November 16, 2011. Plaintiff worked at that time at PNC Bank's Hunters Creek branch.

14. From the time Plaintiff started her banking career in 1991 until September 2014, Plaintiff had never been counseled or written up for disciplinary or productivity problems.

15. From November 16, 2011 up to September 2014 when Marc Sangiovanni became Regional Manager and supervisor of Plaintiff, Plaintiff had never been counseled or received any verbal or written disciplinary or corrective action.

16. In October 2012, Plaintiff's husband passed away unexpectedly.

17. Thereafter, Plaintiff took approved intermittent FMLA leave at different periods of time to deal with her depression and anxiety disorders.

18. The first time Plaintiff took FMLA leave was from November 2012 to February 2013.

19. Plaintiff took FMLA leave again from June 10, 2014 to July 9, 2014.

20. Plaintiff took FMLA leave again from November 18, 2014 to November 21, 2014.

21. Plaintiff was diagnosed with depressive and anxiety disorders from November 2012 to the time of her separation with the Defendant in 2015.

22. Based on Plaintiff's intermittent FMLA requests and approvals of same by Defendant, Defendant had knowledge that Plaintiff suffered from mental health disorders and intermittent mental health problems since 2012.

23. In September 2014 when Marc Sangiovanni became Regional Manager and supervisor of Plaintiff.

24. During the time Mr. Sangiovanni was Plaintiff's supervisor Plaintiff lodged no less than three official complaints and numerous unofficial complaints to the Defendant about Mr. Sangiovanni's interference with and restraining of her FMLA rights, Mr. Sangiovanni's disparate treatment of Plaintiff, Mr. Sangivanni's retaliation against Plaintiff, and Mr. Sangiovanni's failure to accommodate Plaintiff's disability.

25. On November 17, 2014, Plaintiff advised Mr. Sangiovanni that she would be out the rest of the week on approved FMLA leave due to her mental illness.

26. Mr. Sangiovanni responded by saying to Plaintiff that he did not understand why she kept having so many unexcused absences and Plaintiff explained again that the absences were approved intermittent FMLA leave for her mental illness.

27. After her return, Mr. Sangiovanni came to Plaintiff on December 3, 2014 and stated that he considered her absences unexcused and that the absences "posed a problem" for Plaintiff.

28. Plaintiff requested that Mr. Sangiovanni contact the Leave and Disability Center of PNC Bank for confirmation that her leave was approved and requested that he allow her use of intermittent leave as an accommodation for her mental disabilities and that he not use her request for or use of FMLA leave as a negative factor in his employment actions with regard to her.

29. On December 4, 2014, Mr. Sangiovanni received the FMLA approval which allowed Plaintiff intermittent FMLA through December 3, 2015.

30. Immediately following his receipt of Plaintiff's FMLA approval, Mr. Sangiovanni issued a warning to Plaintiff via email regarding her not meeting her November 2014 goal benchmarks.

31. On December 5, 2014, a conference call was held with Mr. Sangiovanni, Julie Cart from Human Resources, and Plaintiff to discuss Plaintiff's failure to meet the November performance goals and expectations were set out for December goals.

32. November 2014 was the only month during 2014 that Plaintiff's branch location did not meet the performance goals.

33. Plaintiff met the performance goals set out for her for December 2015.

34. On January 15, 2016, Jeffrey Dyrlund, PNC Senior Sales and Service Manager, visited Plaintiff's branch and congratulated her on being in the top three branches for Transaction Migration and told Plaintiff that was a very important factor to

PNC Bank in the Florida market.

35. Despite that and despite meeting her December 2014 goals and every other month's goals for 2014 other than November, Marc Sangiovanni came to Plaintiff's branch on January 22, 2015 and gave Plaintiff written discipline for not meeting goals for the last quarter of 2014 due to November's numbers.

36. Plaintiff's branch and no other branch in Florida had been given quarterly goal expectations for 2014. All goal expectations provided to branches in 2014 had been monthly goal expectations.

37. Mr. Sangiovanni created the quarterly goal evaluation for the last quarter of 2014 for Plaintiff/Plaintiff's branch alone thus holding her to a different standard than all other employees and branches under his supervision.

38. In the written discipline entitled Corrective Action Form, Mr. Sangiovanni gave Plaintiff expectations to meet that were the very top tier, most difficult of expectations to meet for every single category.

39. In order to set up Defendant's pretextual reason for its unlawful employment actions against Plaintiff, Mr. Sangiovanni included numerous items in the written discipline that either were not factual or that had never once been mentioned to Plaintiff prior to papering her employment file with the written discipline even though much time had passed since the events allegedly occurred.

40. Other PNC Florida branches and branch managers in the area, even those with more serious underperformance issues such as Bloomington, were not given those stringent, top tier requirements that Plaintiff was given.

41. Additionally, Mr. Sangiovanni had refused to approve any applicants to fill a staff position at Plaintiff's branch for six months, leaving Plaintiff's branch understaffed since he started as its supervisor yet Plaintiff still met expectations for the entire year except for November 2014.

42. Further, during this time period, Mr. Sangiovanni encouraged the staff at Plaintiff's branch to call in complaints about her.

43. As a result of Mr. Sangiovanni's actions and failure to accommodate, Plaintiff had a relapse into depression and additionally started suffering from severe anxiety and took approved FMLA leave from January 24, 2015 to April 3, 2015.

44. On March 31, 2015, Plaintiff contacted PNC Bank's human resources to discuss returning to work and again requesting that PNC Bank address Mr. Sangiovanni's behavior toward her, lack of accommodation to her, and unfair treatment and requirements of her as compared to her similarly situated comparators.

45. Human resources agent for Defendant Brandy Ruffner refused to address any of Plaintiff's concerns with regard to Mr. Sangiovanni's treatment of Plaintiff and instead proposed as a remedy to move Plaintiff to a different branch location, the Oviedo branch, to "start over."

46. Ms. Ruffner failed to inform Plaintiff that the Oviedo office had one third less customer traffic than Plaintiff's current Hunters Creek branch or that the staff at the Oviedo branch were not meeting their goals, including but not limited to the revenue credit threshold goals upon which Plaintiff's performance and pay would be based.

47. On Plaintiff's return to work on April 3, 2015 at the Oviedo location,

Plaintiff learned from the branch staff that the branch was underperforming and Plaintiff immediately contacted Ms. Ruffner and Renee Cuffey to express her concerns and to request a sixty days abatement of performance expectations in order to get the Oviedo branch in compliance with expected goals.

48. Defendant refused to accommodate Plaintiff with the sixty day abatement period and instead informed her that the highest tier requirements in her written Corrective Action Form from her previous branch would apply to her at the new branch location.

49. Thereafter, Mr. Sangiovanni continued to harass Plaintiff about the performance of the Oviedo branch and her failure to improve its performance.

50. Mr. Sangiovannia also harassed and retaliated against Plaintiff by telling her that she had been a problem to numerous past regional managers and that her employee file was full of their complaints but refused to allow her to review her file to attempt to dispute his claims.

51. On May 5, 2015, Plaintiff contacted Ms. Ruffner and request the right to review her employee file to try to refute Mr. Sangiovanni's allegations and relieve her increasing anxiety and depression about the work conditions but Ms. Ruffner failed to accommodate Plaintiff's request.

52. By June 1, 2015, Defendant had made the working conditions so intolerable that Plaintiff was forced to resign.

53. No accommodation was made with regard to Plaintiff's performance goals and requirements in that the goals and requirements were not prorated or adjusted based on the time periods she was out on FMLA leave to accommodate her disability.

54. Plaintiff was rated lower than her comparators as a result of Defendant's failure to prorate or adjust the performance goals and requirements for the time she was out on FMLA leave to accommodate her disability.

55. Plaintiff's compensation by way of quarterly bonuses was negatively impacted due to Defendant's failure to accommodate her by prorating or adjusting her performance goals and expectations based on her FMLA to accommodate her disability.

56. Plaintiff was repeatedly told that she was accountable for her performance during any times she was out on FMLA leave and was expected to meet all performance goals during those leave periods with no accommodation.

57. As a direct and proximate result of the actions by Defendant, Plaintiff suffered mental anguish, emotional distress, harm to reputation, other actual damages, and lost compensation since the date of the illegal conduct.

## COUNT I

## FAMILY MEDICAL LEAVE ACT

58. Plaintiff adopts by reference, as if set out fully and completely in this Count, the following statements of this Complaint: Paragraphs 1 through 51.

59. Defendant, PNC BANK, interfered, restrained or denied Plaintiff her rights under the Family Medical Leave Act as described hereinabove.

60. Defendant, PNC BANK, intentionally discriminated against Plaintiff as described hereinabove in connection with the compensation, terms, conditions and privileges of employment in violation of the Family Medical Leave Act.

61. As a direct result of Defendants actions, Plaintiff suffered damages described hereinabove for which Plaintiff herein sues.

## COUNT II

## RETALIATION – FMLA

62. Plaintiff adopts by reference, as if set out fully and completely in this

Count, the following statements of this Complaint: Paragraphs 1 through 51.

63. Plaintiff alleges that Defendant, PNC BANK, instituted a campaign of retaliation which included assigning to Plaintiff performance expectations above and beyond that expected of other employees who do not share the same protected characteristic, reassigning her to an underperforming branch while still requiring compliance with the top performance standards, and all other actions described hereinabove.

64. This retaliation was and is due to Plaintiff's request for or use of FMLA leave.

65. As a direct result of Defendants actions, Plaintiff suffered damages described hereinabove for which Plaintiff herein sues.

**COUNT III**

**AMERICANS WITH DISABILITY ACT**

66. Plaintiff adopts by reference, as if set out fully and completely in this Count, the following statements of this Complaint: Paragraphs 1 through 51.

67. Defendant, PNC Bank, intentionally engaged in unlawful employment practices involving Plaintiff as described hereinabove because of Plaintiff's disability.

68. Defendant, PNC Bank, intentionally discriminated against Plaintiff as described hereinabove in connection with the compensation, terms, conditions and privileges of employment in violation of 42 U.S.C. Section 12112.

69. The effect of these practices has been to deprive Plaintiff of equal employment opportunities and otherwise adversely affect Plaintiff's status as an

employee.

70. At all material times, Plaintiff was able to perform the essential functions of Plaintiffs position with accommodation.

71. Plaintiff has a disability, has a record of a disability and is regarded as having a disability which substantially limits at least one major life activity.

72. Plaintiff was discriminated against on the basis of Plaintiffs disability, record of a disability, and perception of having a disability.

73. As a direct result of Defendants actions, Plaintiff suffered damages described hereinabove for which Plaintiff herein sues.

**COUNT IV**

**RETALIATION - DISABILITY**

74. Plaintiff adopts by reference, as if set out fully and completely in this Count, the following statements of this Complaint: Paragraphs 1 through 51.

75. Plaintiff alleges that Defendant, PNC BANK, instituted a campaign of retaliation which included assigning to Plaintiff performance expectations above and beyond that expected of other employees who do not share the same protected characteristic, reassigning her to an underperforming branch while still requiring compliance with the top performance standards, and all other actions described hereinabove.

76. This retaliation was and is due to Plaintiff's disability and her request for accommodation thereof.

77. As a direct result of Defendants actions, Plaintiff suffered damages

described hereinabove for which Plaintiff herein sues.

**COUNT V**

**CONSTRUCTIVE DISCHARGE**

78. Plaintiff adopts by reference, as if set out fully and completely in this Count, the following statements of this Complaint: Paragraphs 1 through 51.

79. PNC BANK made the working conditions so intolerable as described hereinabove that Plaintiff felt compelled to resign Plaintiff's position. A reasonable person in the same position would have also felt compelled to resign.

80. As a direct result of Defendants actions, Plaintiff suffered damages described hereinabove for which Plaintiff herein sues.

**ATTORNEY'S FEES**

81. Plaintiff has employed The Orlando Law Group, PL for representation in this action, and has agreed to pay a reasonable attorney fee to The Orlando Law Group, PL.

82. Plaintiff is entitled to recover reasonable attorney's fees incurred in connection with this action pursuant to, inter alia, 29 U.S. Code § 2617 and 42 U.S. Code § 12117 and any other applicable statutes.

**DEMAND FOR JURY TRIAL**

83. Plaintiff demands a trial of this action by jury.

**DEMAND FOR JUDGMENT**

**WHEREFORE**, Plaintiff demands a jury trial of this action, and further demands judgment against Defendant for back pay, front pay, compensatory and punitive damages,

attorney's fees, and for such other and further relief, in law or in equity, to which Plaintiff may be justly entitled.

Respectfully submitted,

The Orlando Law Group, PL
Attorney for Plaintiff

Kimberly E. Hosley, Esq.
Florida Bar Number: 015365
Jennifer A. Englert, Esq.
Florida Bar Number: 180297
12301 Lake Underhill Rd., Suite 213
Orlando, Florida 32828
Telephone: (407) 512-4394
Fax: (407) 982-7250
E-Mail: khosley@theorlandolawgroup.com
E-Mail 2: rmoyer@theorlandolawgroup.com